# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

BFNO PROPERTIES, LLC and               CIVIL ACTION
TUCKER PROPERTY HOLDINGS, LLC
       Plaintiffs,

VERSUS                                   No. 15-300

HOUSING AUTHORITY OF
NEW ORLEANS, ET AL.,              SECTION "E"(5)
       Defendants,

## ORDER

Before the Court is a Motion to Remand filed by Plaintiffs BFNO Properties, LLC and Tucker Property Holdings, LLC.[1] For the reasons set forth below, Plaintiffs' Motion to Remand is **DENIED.**

## BACKGROUND

Plaintiffs BFNO Properties, LLC and Tucker Property Holdings, LLC are the owners and operators of Jackson's Landing North and Jackson's Landing South, apartments located in New Orleans, Louisiana in the area referred to as Algiers.[2] Defendant Housing Authority of New Orleans ("HANO") is a public housing authority that assists in providing affordable housing to low and moderate-income families in New Orleans.[3]

---

[1] R. Doc. 5.

[2] R. Doc. 1-1 at p. 1.

[3] Although HANO is a political subdivision of the state, it is not entitled to sovereign immunity under the Eleventh Amendment as an arm of the state. Louisiana Revised Statutes define a local housing authority as "a political subdivision of this state." La. R.S. § 40:384(16). *See also Walker v. Woods*, No. 10-4267, 2011 WL 2637328, at *3 n.10 (E.D. La. July 6, 2011) (Africk, J.); *Zeigler v. Hous. Auth. of New Orleans*, No. 10-2956, 2011 WL 39008, at *1 (E.D. La. Jan. 5, 2011) (Barbier, J.). However, this categorization alone does not give an entity Eleventh Amendment immunity as an arm of the state. "The Fifth Circuit employs [a] six-factor test to determine whether an entity is an arm of the state such that it is entitled to sovereign immunity," and the fact that Louisiana statutes refer to HANO as a political subdivision "is relevant only to the first [of the six] factors." *Garcia v. Hous. Auth. of New Orleans*, No. 12-1863, 2013 WL 264332, at **3–4 (E.D. La. Jan. 23, 2013) (Africk, J.). At least three sections of this Court have balanced the six factors and found HANO is not entitled to Eleventh Amendment immunity. *See id.*; *Kenyatta–Bean v. Hous. Auth. of New Orleans*, No. 04–2592, 2005 WL 3543793 (E.D. La. Nov. 18,

In 2002, the U.S. Department of Housing and Urban Development ("HUD") determined that HANO was in substantial default of its obligations under its contract with HUD, which authorized HUD to force HANO into federal receivership.[4] While HANO was under receivership, HUD appointed David Gilmore to be the Executive Administrator and Receiver ("Administrative Receiver") for HANO.[5]

In December 2010, HANO entered into Housing Assistance Payments Contracts with Plaintiffs for the Section 8 Project-Based Voucher Program at Jackson's Landing North and South ("the HAP Contracts").[6] David Gilmore signed the HAP Contracts on HANO's behalf.[7] The purpose of the HAP Contracts "is to provide housing assistance payments for eligible families who lease contract units that comply with the HUD [Housing Quality Standards] from the owner[s]."[8] Effective December 31, 2010 for a term of 15 years, the HAP Contracts require Plaintiffs to reserve certain units in Jackson's Landing North and South for low-income tenants in return for HANO making

---

2005) (Lemmon, J.); *Norris v. Hous. Auth. of New Orleans*, No. 02–468, 2003 WL 22384936 (E.D. La. Oct. 16, 2003) (Chasez, Mag. J.); *see also Hous. Auth. of City of New Iberia v. Axis Surplus Ins. Co.*, No. 08–0020, 2008 WL 731205 (W.D. La. Mar. 17, 2008) (Hill, Mag. J.) (holding that the Housing Authority of the City of New Iberia is not an arm of the state for the same reasons that HANO is not an arm of the state). This Court sees no reason to disagree with the persuasive reasoning in these cases.

[4] R. Doc. 1-1 at p. 10; *HUD Returns Housing Authority of New Orleans to Local Control*, NOLA.GOV (May 28, 2014), http://www.nola.gov/mayor/press-releases/2014/20140528-hano-to-transition-to-local-control/ ("Prior to administrative receivership, HUD, the City of New Orleans, and HANO implemented several reforms and oversight strategies which failed to improve operations at HANO. HANO spent decades in serious default.  HANO struggled to obligate grants including millions of dollars in HOPE VI grants, or implement proper procurement to revitalize its aging and obsolete public housing stock. HANO was deficient in other operational areas, such excessive vacant unit turnover time (200 days), over four times the satisfactory number of days.").

[5] *Housing Authority of New Orleans*, NOLA.GOV, http://www.nola.gov/boards/housing-authority-of-new-orleans/ (last visited Apr. 14, 2015); R. Doc. 1-1 at p. 10.

[6] BFNO Properties, LLC entered into the HAP Contract for Jackson's Landing – North. *See* R. Doc. 5-2. The HAP Contract for Jackson's Landing – South was entered into by Garden Oaks Holdings, LLC, which assigned its HAP Contract to Tucker Property Holdings, LLC on December 28, 2012. *See* R. Doc. 1-1 at p. 2; R. Doc. 5-3. Plaintiffs also have tenants under the Tenant-Based Housing Choice Voucher Program. R. Doc. 1-1 at p. 2.

[7] R. Doc. 1-1 at pp. 1–2. Gilmore in his affidavit represents that both Jackson's Landing North and South were under his jurisdiction and authority. R. Doc. 1-1 at p. 10.

[8] R. Doc. 5-2 at p. 10; R. Doc. 5-3 at p. 10.

housing assistance payments to Plaintiffs for the difference between the low-income tenants' contributions and the rent specified in the HAP Contracts.[9]

David Gilmore also signed a Decision Memorandum dated March 26, 2014 regarding the use of certain rent comparables for the calculation of Plaintiffs' reasonable rent increases.[10] In Gilmore's affidavit attached to Plaintiffs' petition, he states that he signed the Decision Memorandum and authorized the movement of tenants from one apartment to another during reconstruction of the apartment complexes.[11] In July of 2014, HANO was returned to local control, and Gregg Fortner was appointed as Executive Director of HANO to lead the transition.[12]

On January 20, 2015, Plaintiffs filed a petition in the Civil District Court for the Parish of Orleans, State of Louisiana seeking damages for breach of contract and injunctive relief against HANO and Dwayne G. Bernal, Alice Reiner, Toni Hackett Antrum, Glen M. Pilie, and Vonda Rice, in their capacities as members of HANO's Board of Commissioners.[13] Plaintiffs' petition makes the following allegations:

> (1) "HANO owes plaintiffs in an amount exceeding $250,000 for funds wrongfully recaptured and/or withheld that HANO refuses to pay plaintiffs, and said amount continues to increase monthly as HANO wrongfully recaptures and/or withholds funds owed to plaintiffs based on the [HAP] contracts;"[14]
>
> (2) "Plaintiffs have not received any new tenants for the Project-Based Housing Choice Voucher Program since June of 2014 and have a number of vacancies which should have been filled;"[15]
>
> (3) "HANO has refused to abide by the agreement[s] made between plaintiffs and HANO" that were approved by David Gilmore while HANO was in receivership and under his absolute control as Executive

---

[9] R. Doc. 5-2; R. Doc. 5-3.
[10] R. Doc. 6-1 at pp. 86–87 (Exhibit "E"); R. Doc. 1-1 at ¶¶ XI–XII, XIV; R. Doc. 1-1 at p. 10.
[11] R. Doc. 1-1 at p. 10 (Exhibit "C"); R. Doc. 1-1 at ¶¶ XII, XIV.
[12] *See HANO Fact Sheet*, HANO.ORG (Winter 2015), http://www.hano.org (follow "Our Story" hyperlink; then follow "Fact Sheet" hyperlink).
[13] R. Doc. 1-1 at p. 1.
[14] *Id.* at ¶ IX.
[15] *Id.* at ¶ X.

Administrator (i) "regarding the moving of tenants during the reconstruction of the facilities," and (ii) "approv[ing] a Rent Reasonableness (Rent Increase Request) authorizing plaintiffs to use rent comparables furnished by a state licensed appraiser for the calculation of reasonable rent increases;"[16] and

(4) "HANO has refused to recognize the rent increases that became automatic once Jackson's Landing Apartments North was recognized as a tax credit property in 2014."[17]

Plaintiffs seek remand of their action to state court for "funds due to [them under their contractual agreements with HANO] as well as damages, costs, attorney's fees, and equitable relief.[18] The petition also requests a temporary restraining order, a preliminary injunction, and a permanent injunction to stop HANO from monthly recapturing and/or withholding any funds due to Plaintiffs.[19] Before removal, the state court issued a temporary restraining order prohibiting HANO or anyone acting at its direction from wrongfully recapturing and/or withholding future or past rents and any other funds due to Plaintiffs.[20] The temporary restraining order expired on January 30, 2015 at 12:00 pm.[21]

On January 30, 2015, Defendants removed the case to this Court, asserting in the notice of removal that the Court has federal question subject-matter jurisdiction.[22] On February 11, 2015, Plaintiffs moved to remand the case to state court arguing that the petition asserts no federal claims and, therefore, the Court lacks subject-matter jurisdiction over this case.[23] Plaintiffs argue in their memorandum that their state court

---

[16] *Id.* at ¶¶ XI–XIII, XIV.
[17] *Id.* at ¶ XIII; R. Doc. 5-1 at p. 2.
[18] R. Doc. 1-1 at p. 4
[19] *Id.*
[20] *Id.* at p. 7
[21] *Id.*
[22] R. Doc. 1 at p. 2. Both parties agree that diversity jurisdiction does not exist. R. Doc. 1 at p. 2; R. Doc. 5 at p. 2.
[23] R. Doc. 5.

petition brings claims solely for breach of contract arising under Louisiana law.[24] On February 25, 2015, Defendants filed an amended notice of removal further specifying the federal statutes and regulations they claim support removal under 28 U.S.C. § 1331.[25] On February 25, 2015, Plaintiffs also filed a motion to expedite consideration of the motion to remand.[26] The Court granted the motion to expedite,[27] and the motion to remand is now under submission.

## LAW AND ANALYSIS

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[28] However, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"[29] Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the action is one over which the federal court possesses original jurisdiction.[30] The removing party bears the burden of proving federal subject-matter jurisdiction exists and thus removal is proper.[31] In order to determine whether jurisdiction exists, the

---

[24] *See* R. Doc. 5-1 at p. 4 ("The causes of action stated by the Petition are for breach-of-contract claims arising under Louisiana Law. . . . [T]he HAP contracts also address both vacancy and rent adjustments.").

[25] R. Doc. 10. Defendants assert in their amended notice of removal that "this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1355, and §1337." R. Doc. 10 at pp. 2–3. Section 1331 grants the federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and section 1337 grants the federal district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337. "Judicial interpretations of 'arising under' are equally applicable to 28 U.S.C. § 1331 and 28 U.S.C. § 1337." *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 n.1 (9th Cir. 1973) (citing *Russo v. Kirby*, 453 F.2d 548, 551 n.2 (2d Cir. 1971)). Section 1355 grants the federal district courts "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." 28 U.S.C. § 1355. Although Defendants cite this statute, they fail to explain how it applies in this case.

[26] R. Doc. 11.

[27] R. Doc. 12.

[28] *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks and citation omitted).

[29] *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)).

[30] 28 U.S.C. § 1441; *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

[31] *Manguno*, 276 F.3d at 723 (citations omitted).

federal court considers the claims in the state court pleadings as they existed at the time of removal.[32] Any doubt as to whether removal jurisdiction is proper should be resolved in favor of remand because removal jurisdiction must be strictly construed.[33]

In this case, there is no allegation of diversity jurisdiction; thus, there must be federal question jurisdiction for removal to be proper.[34] District courts have federal question jurisdiction over "all civil actions *arising under* the Constitution, laws, or treaties of the United States."[35] Cases "arise under" federal law in one of two ways. Most commonly, federal question jurisdiction is invoked when a plaintiff pleads a cause of action created by federal law.[36] "There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction . . . ."[37] That is, federal question jurisdiction will lie if "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[38]

Plaintiffs argue the allegations in the petition do not present a claim created by federal law, raise a substantial issue of federal law, or provide any other statutory,

---

[32] *See id.*
[33] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).
[34] *See Willy*, 855 F.2d at 1164.
[35] 28 U.S.C. § 1331 (emphasis added).
[36] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).
[37] *Id.*
[38] *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (2008) (internal quotation marks and citation omitted). For removal purposes, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule recognizes the principle that a plaintiff is the master of his complaint. *Carpenter v. Wichita Falls Ind. School Dist.*, 44 F.3d 363, 366 (5th Cir. 1995). There are, however, narrow exceptions to the well-pleaded complaint rule. One such exception exists when Congress creates an exception by expressly providing that a state court action asserting only state law claims may be removed to federal court. *See Beneficial Nat'l Bank, et al. v. Anderson*, 539 U.S. 1, 6 (2003). The other exception is where "a federal statute wholly displaces the state-law cause of action through complete preemption." *Id.* at 8. Absent these extraordinary circumstances, the well-pleaded complaint rule governs. *Carpenter*, 44 F.3d at 367; *Caterpillar*, 482 U.S. at 392.

constitutional, or jurisprudential basis for the exercise of federal court jurisdiction.[39] For this reason, Plaintiffs contend this case must be remanded to state court for lack of federal subject-matter jurisdiction. Defendants contend the petition "alleges claims which arise under and are governed by federal law and/or arise under and are governed by Acts of Congress regulating commerce," including but not limited to Section 6(j) of the United States Housing Act of 1937, codified as 42 U.S.C. § 1437d(j) ("Section 6(j)"), and certain HUD federal regulations.[40] Defendants further argue that "Plaintiffs' state court Petition raises claims that both arise under federal law and raise substantial federal questions," and, even if Plaintiffs were bringing only claims for state law breach of contract, "the (inapplicable) contractual provisions that Plaintiffs cite in the motion to remand are so inextricably intertwined with the federal statutes and regulations at issue that Plaintiffs' rights cannot be determined without deciding substantial questions of federal law."[41]

Federal question jurisdiction exists when a plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.[42] A case falls under this special category of cases "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

---

[39] R. Doc. 5; R. Doc. 15.

[40] R. Doc. 10 at pp. 2–3. Defendants argue the well-pleaded complaint rule does not apply in this case because Plaintiffs have "artfully pleaded" by specifically avoiding making reference to any of the federal statutes or regulations that Plaintiffs will necessarily rely on. R. Doc. 16 at p. 8. "The artful pleading doctrine is a narrow exception to the well-pleaded complaint rule, and it prevents a plaintiff from defeating removal by failing to plead necessary federal questions. The artful pleading doctrine does not apply, however, unless federal law completely preempts the field." *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188 (5th Cir. 2001) (citations omitted). Defendants have failed to argue, let alone demonstrate, that Plaintiffs' claims are completely preempted. Nor do Defendants point to any provision in the federal statutes demonstrating Congress has expressly preempted Plaintiffs' state law claims. *See Beneficial Nat'l Bank*, 539 U.S. at 6–7, 11. Thus, the artful pleading doctrine does not apply in this case.

[41] R. Doc. 16 at p. 2.

[42] *See Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[43] "Ultimately, whether a federal issue embedded in the matrix of a state law claim will support federal question jurisdiction entails a pragmatic assessment of the nature of the federal interest at stake . . . ."[44]

In 1974, Congress amended the United States Housing Act of 1937 to create the Section 8 housing program.[45] "The Section 8 program is a vast effort on the part of federal, state, and local authorities to provide decent, safe, and sanitary housing to low-income families, the elderly, and the disabled. The program is administered by [HUD] in conjunction with state and local public housing agencies across the country," like HANO.[46] As part of the program, HUD can either enter into HAP contracts directly with landlords or enter into contracts with state or local public housing authorities, which in turn receive funds from HUD in exchange for entering into HAP contracts with and subsidizing low-rent landlords.[47] Ordinarily HUD does not control public housing authorities like HANO; however, Section 6 expressly provides that HUD can determine public housing authorities are "troubled," and those deemed in "substantial default" can be placed under administrative HUD receivership.[48] If that occurs, HUD can appoint an

---

[43] *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).
[44] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001).
[45] *See* 42 U.S.C. § 1437f.
[46] *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 219 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 986 775 (2014).
[47] *See Gloucester Twp. Hous. Auth. v. Franklin Square Associates*, No. 12-953, 2013 WL 3990820, at *1 (D.N.J. Aug. 2, 2013).
[48] *See* 42 U.S.C. §§ 1437d(g), (j). "A PHA may be declared in substantial default when the PHA: (1) Violates a federal statute; (2) Violates a federal regulation; or (3) Violates one or more terms of an ACC, or other covenants or conditions to which the PHA is subject." 24 C.F.R. § 907.3. Additionally, "in the case

administrative receiver or seek to have the court appoint an administrative receiver to oversee the defaulting or troubled housing authority's operations.[49] The provisions of Section 6 demonstrate Congress's "intent to ensure that federal public monies are distributed to state public housing agencies that, among other things, generally maintain public housing in accordance with certain quality standards."[50]

Supreme Court and Fifth Circuit case law sanction federal question jurisdiction based on the need to resolve a substantial federal question. In *Singh v. Duane Morris LLP*, the Fifth Circuit, relying on the Supreme Court's opinion in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, held that substantial "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[51] On the facts in *Singh*, the Fifth Circuit found federal jurisdiction was lacking where "the federal issue [did not require] resolution of an important question of law" but rather "predominantly one of fact."[52]

---

where a PHA is designated as a troubled performer under PHAS, the PHA shall be in substantial default if the PHA: (1) Fails to execute an MOA; (2) Fails to comply with the terms of an MOA; or (3) Fails to show substantial improvement, as provided in § 902.75(d) of this chapter." *Id.*

[49] For troubled housing agencies in substantial default, if the agency has at least 1,250 units, HUD will petition for the appointment of an administrative receiver. For a troubled agency with fewer than 1,250 units, HUD can either petition for the appointment of a receiver or take over the agency and appoint an individual or entity to act as an administrative receiver and assume HUD's responsibilities for administration of the agency. *See* 24 C.F.R. § 902.83; 24 C.F.R. § 907.7.

[50] *Hill v. San Francisco Hous. Auth.*, 207 F. Supp. 2d 1021, 1028 (N.D. Cal. 2002).

[51] *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (pre-*Gunn*).

[52] *Id.* at 339. *Singh* does not hold that "only pure legal issues can trigger substantial federal question jurisdiction." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1299 (11th Cir. 2008). Rather, "resolution of pure issues of federal law provides the strongest basis for 'resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'" *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).

The decision to apply the substantial federal question doctrine in a particular case is necessarily fact bound,[53] and indeed some courts have found the mere reference to HUD regulations as part of a state law claim is insufficient to invoke substantial federal question jurisdiction.[54] The case now before the Court does not merely reference HUD regulations. Instead, it also calls into question the authority of HUD-appointed and court-appointed administrative receivers to make written and oral agreements that are binding on housing authorities after they return to local control.

The Fifth Circuit has not decided a case involving the applicability of substantial federal question jurisdiction when there are breach-of-contract claims involving housing assistance payments contracts. The two circuit courts that have considered the issue in cases brought by apartment owners against housing agencies for breach of housing assistance payments contracts found they had substantial federal question jurisdiction.[55] In *One & Ken Valley Housing Group v. Maine State Housing Authority*, the First Circuit inquired into whether it had federal jurisdiction *sua sponte*.[56] The plaintiffs were Section 8 landlords who sued a housing authority bringing state law breach-of-contract claims, alleging the housing authority "had wrongfully refused to grant them certain annual increases in their Section 8 payments."[57] The housing authority then impleaded HUD as a third-party defendant, arguing that if it breached

---

[53] *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 225 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 986 (citing *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109 (1936) (Cardozo, J.)).

[54] *See, e.g.*, *W. Michigan Woods Ltd. Dividend Hous. Ass'n Ltd. P'ship v. City of Kalamazoo*, No. 09-79, 2009 WL 2392899, at *5 (W.D. Mich. Aug. 3, 2009); *Rivera v. Phipps Houses Servs., Inc.*, No. 01-2324, 2001 WL 740779, at *5 (S.D.N.Y. June 29, 2001); *N. Jefferson Square Associates, L.P. v. Virginia Hous. Dev. Auth.*, 94 F. Supp. 2d 709, 718 (E.D. Va. 2000) *aff'd*, 32 F. App'x 684 (4th Cir. 2002); *Kunkler v. Fort Lauderdale Hous. Auth.*, 764 F. Supp. 171, 174 (S.D. Fla. 1991); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974).

[55] *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 220 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 986 (2014); *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015). The Court notes both of these actions originated in federal court.

[56] 716 F.3d at 224.

[57] *Id.* at 220.

the housing assistance payments contract, it had done so only at HUD's direction since it followed a guideline promulgated by HUD pursuant to a federal statute.[58]

The First Circuit acknowledged that the substantial federal question doctrine "should be applied with caution" but went on to find the case was "one of the few cases that fit[] squarely within the [substantial federal question doctrine]."[59] In so finding, the First Circuit stated:

> The dispute in this case involves a federal contractor's implementation of a federal program; the contracts at issue were drafted and approved by a federal agency and signed by a federal official; and the plaintiffs allege that the contractor (here, [the housing authority]) was in breach of the agreement by following a guideline promulgated by a federal agency pursuant to a federal statute. Singly, none of these "federal ingredients"—a claim against a federal contractor; an agreement drafted and approved by a federal agency; a defense based on a federal statute or guideline—would be sufficient to establish "arising under" jurisdiction. Yet the scope of [substantial federal question] jurisdiction is determined by the totality of the circumstances, not by a single-factor test. Based on the totality of the circumstances, we find that the federal ingredients of the case predominate.[60]

Additionally, the First Circuit reasoned that resolution of the nearly pure issue of law could govern other cases involving Section 8 landlords, and "'[t]he issue is potentially so important to the success of the [Section 8] program—since on its resolution may turn the amount of lower-income housing actually provided—that [it] believe[d] that Congress, had it thought about the matter, would have wanted the question to be decided by federal courts applying a uniform principle.'"[61] Moreover, the

---

[58] *Id.*

[59] *Id.* at 224 (internal quotation marks and citation omitted). The First Circuit refers to the federal question doctrine as the "federal ingredient exception." *Id.*

[60] *Id.*

[61] *Id.* at 225 (quoting *Price v. Pierce*, 823 F.2d 1114, 1119–20 (7th Cir. 1987) (Posner, J.)).

First Circuit found "'there [wa]s no discernable state interest in a state forum' that would outweigh the federal interest in uniformity."[62]

In January of 2015, the Seventh Circuit in *Evergreen Square of Cudahy v. Wisconsin Housing and Economic Development Authority* cited *Ken Valley* when reversing and remanding a district court's dismissal of an action by apartment owners against a housing authority for lack of subject-matter jurisdiction.[63] As in this case involving HANO, the plaintiffs were apartment owners alleging a housing agency breached a housing assistance payments contract by refusing to approve annual rent increases, as required by Section 8.[64] The housing authority also filed a third-party complaint against HUD, "alleging that, if [the housing authority was] found to have breached the [housing assistance payments] contracts, then those breaches resulted from [the housing authority] following congressional and HUD directives."[65]

The Seventh Circuit found *Ken Valley*'s reasoning persuasive, holding "[t]he resolution of th[e] case turn[ed] on issues of federal law—specifically, the application of 42 U.S.C. § 1437f and related regulations and notices promulgated by HUD."[66] The court found the issues were "necessarily raised, actually disputed, and substantial. While state law may create the breach-of-contract causes of action, the only disputed issues involve the proper interpretation of Section 8 and HUD's implementing guidance."[67]

---

[62] *Id.* (quoting *Bender v. Jordan*, 623 F.3d 1128, 1131 (D.C. Cir. 2010)).
[63] *776* F.3d 463, 467 (7th Cir. 2015).
[64] *Id.* at 464–65, 467.
[65] *Id.* at 465.
[66] *Id.* at 467.
[67] *Id.*

Additionally, the Seventh Circuit found the federal issues were "'capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'"[68] The court reasoned:

> Unlike a typical breach-of-contract case, the [housing assistance payments] contracts at issue are ones to which HUD, a federal agency, prescribes both the form and content. The HAP contracts must be approved by HUD and their terms are administered pursuant to federal laws and regulations. [The housing authority] expressly contends that, if there was any breach of contract, then federal law required it. Similar lawsuits have been brought nationwide by Section 8 property owners. In the aggregate, these cases have the potential to substantially influence the scope and success of the Section 8 program. Accordingly, the federal government has a strong interest in these issues being decided according to uniform principles. The desirability of a uniform interpretation of these contracts ... will best be achieved by allowing suit in federal courts. We find that this case fits within the "special and small category of cases" in which federal "arising under" jurisdiction lies over a complaint raising state-law causes of action.[69]

The circuit courts in *Ken Valley* and *Evergreen Square* both found substantial federal question jurisdiction existed over landlords' claims concerning housing assistance payments contracts with housing authorities. The argument for exercising federal question jurisdiction in this case is more compelling, as the outcome could have a broader impact for housing agencies placed into receivership and managed by a HUD or court-appointed administrative receiver. Although Plaintiffs claim in their motion to remand that their petition asserts only state law breach-of-contract claims,[70] this case "arises in the context of a complex web of statutes and regulations governing federal

---

[68] *Id.* (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013)).

[69] *Id.* (internal quotation marks and citations omitted).

[70] The petition does not specify the basis of Plaintiffs' claims. The memorandum in support of Plaintiffs' motion to remand states they are bringing state law claims for breach of contract. *See* R. Doc. 5-1 at p. 4 ("The causes of action stated by the Petition are for breach-of-contract claims arising under Louisiana Law. . . . [T]he HAP contracts also address both vacancy and rent adjustments.").

housing aid."[71] HANO was under federal receivership pursuant to Section 6(j) at the time the HAP Contracts were entered into but is now under local control. David Gilmore signed the HAP Contracts and also allegedly made certain other agreements while Administrative Receiver for HANO. The parties now dispute the binding nature of Gilmore's actions since HANO has emerged from administrative receivership. Gilmore's appointment and the extent of his authority are governed by federal statute and the Administrative Receivership Services Contract between HUD and Gilmore.[72] A decision in this case could affect the binding nature of agreements made by HUD-appointed and court-appointed administrative receivers. The decision in this case will be based, in large part, on the application of federal law.

Looking to "the importance of the [federal] issue to the federal system as a whole" rather than just the importance to the parties, the Court finds this issue to be a substantial one.[73] Not only could "the outcome of the claim . . . turn on a new interpretation of a federal statute or regulation" that could impact future cases involving public housing authorities under administrative receivership, but the case also has "'broader significance . . . for the Federal Government'"[74] given the fact that HANO was managed by HUD at the time the HAP Contracts were entered into and Gilmore's authority as Executive Administrator to bind HANO is in question.[75]

---

[71] *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 220 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 986 (2014). For further discussion about the Section 8 provision of the New Deal-era Housing Act, see *id.* at 220–24.

[72] *See* 42 U.S.C. § 1437d(j); R. Doc. 16-2.

[73] *See Gunn*, 133 S. Ct. at 1066 ("[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raises' a disputed federal issue . . . . The substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole.").

[74] *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) (quoting *Gunn*, 133 S.Ct. at 1066).

[75] *Id.* ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.' *Gunn*, 133 S.Ct. at 1066. That is, because '[t]he Government has a direct

Furthermore, just as in *Ken Valley* and *Evergreen Square*, the HAP Contracts are administered pursuant to federal statutes and regulations, and the Court will be required to interpret these laws in determining whether HANO breached the HAP Contracts and other agreements.[76] Interpretations of provisions of the HAP Contracts and associated HUD regulations could impact how HUD administers the Section 8 Project-Based Voucher Program. Considering the federal issues presented in this case, especially those relating to HUD and the authority of its appointed administrative receiver, the Court finds there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum."[77]

The Court finds the resolution of Plaintiffs' claims turns on issues of federal law—specifically, the interpretation of Section 6(j) of the United States Housing Act of 1937 and regulations promulgated by HUD. These issues are necessarily raised, actually disputed, and substantial. The parties dispute both the proper interpretation of Section 6(j) with respect to the authority of David Gilmore as Executive Administrator to bind the housing authority after it is no longer under federal receivership and also the applicability and interpretation of certain HUD regulations.[78] Looking at the totality of

---

interest in the availability of a federal forum to vindicate its own administrative action,' *Grable* [*& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*], 545 U.S. [308,] 315 [(2005)], the Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by 'a federal department, agency, or service.' *Empire Healthchoice Assurance  [Inc. v. McVeigh]*, 547 U.S. [677,] 700 [(2006)].").

[76] *See Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467–68 (7th Cir. 2015). Although HUD was a third-party defendant in these two cases and HUD is not in this case, that fact is not determinative since the HAP Contracts between Plaintiffs and HANO are still administered pursuant to federal statutes and regulations. "The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. The federal issue must be a substantial one that indicates a serious federal interest in claiming the advantages inherent in a federal forum." *Louisiana v. Abbott Labs.*, No. 13-681, 2014 WL 4924329, at *4 (M.D. La. Sept. 30, 2014).

[77] *See Grable*, 545 U.S. at 313.

[78] *See Evergreen*, 776 F.3d at 467.

the circumstances surrounding this specific instance, the federal issues raised in Plaintiffs' case are sufficiently substantial to confer federal question jurisdiction.

The Court also finds these issues are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[79] The HAP Contracts at issue in this case were entered into while HANO was under federal receivership and managed by HUD, a federal agency. Additionally, "[u]nlike a typical breach-of-contract case, the HAP Contracts at issue are ones to which HUD . . . prescribes both the form and content. The HAP Contracts must be approved by HUD and their terms are administered pursuant to federal laws and regulations."[80] Furthermore, the interpretation of Section 6(j) of the United States Housing Act could have implications for future cases involving troubled housing agencies.[81] For this reason, the federal government has an interest in the interpretation of the HAP Contracts as well as the interpretation of federal laws—such as Section 6(j)—and HUD regulations as they relate to Section 8 housing. This federal interest will best be served by allowing suit in federal courts.[82] Additionally, because the Court will examine David Gilmore's authority as Administrative Receiver and interpret Section 6(j) and the Administrative Receivership Services Contract between HUD and Gilmore, certain

---

[79] *Gunn*, 133 S.Ct. at 1065. Allowing federal jurisdiction in a case such as this one will not "materially affect, or threaten to affect, the normal currents of litigation," *Grable*, 545 U.S. at 319, because this decision is unlikely to impact Louisiana's body of contract law in any significant way. Additionally, the Court finds any state interest in this case is outweighed by the federal interests at hand.
[80] *Evergreen*, 776 F.3d at 467–68. *See also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 221 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 986 (2014) ("HUD has . . . drafted a standard form contract for state and local agencies to use when entering into agreements with Section 8 landlords.").
[81] *See Evergreen*, 776 F.3d at 468 (citing *Ken Valley*, 716 F.3d at 225 n.5.).
[82] *See id.* (quoting *Price v. Pierce*, 823 F.2d 1114, 1120 (7th Cir. 1987)).

issues may be governed by federal common law.[83] This further supports the exercise of federal question jurisdiction over this case.

The Court finds that this case fits within the category of cases where the state law claims "arise under" federal law because they raise a substantial federal question.[84] Because this Court has federal question jurisdiction over Plaintiffs' claims, the motion to remand is denied.

**CONCLUSION**

**IT IS ORDERED** that Plaintiffs' motion to remand is **DENIED.**


New Orleans, Louisiana, this <u>16th</u> day of April, 2015.


**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[83] *See Price v. Pierce*, 823 F.2d 1114, 1119–21 (7th Cir. 1987) (citing *Holbrook v. Pitt*, 643 F.2d 1261, 1270 n.16 (7th Cir. 1981); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1478–80 (7th Cir. 1985)). However, because the parties have not briefed the issue of whether state law or federal common law should apply in this instance, the Court declines to definitively decide the issue at this time.

[84] To the extent any part of Plaintiffs' claims do not "arise under" federal law, the Court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.